[S.F. No. 24380. Oct. 28, 1982.]

JITENDRA KUMAR, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
YVONNE KUMAR, Real Party in Interest.

**COUNSEL**

Caralisa P. Hughes and Bernard N. Wolf for Petitioner.

No appearance for Respondent.

Dolly Ares for Real Party in Interest.

**OPINION**

**KAUS, J.**—Jitendra Kumar seeks a writ of mandate to compel respondent superior court to quash service of process and to dismiss an order to show cause in a child custody action brought by Yvonne Kumar for modification of a New York support order and custody/visitation decree. We must decide whether California has authority to modify the out-of-state custody decree, a question which has presented the most difficult problem in the interpretation and application of the Uniform Child Custody Jurisdiction Act (hereafter Uniform Act).[1] We conclude that, under the letter and spirit of the Uniform Act, New York has continuing jurisdiction to modify its custody decree so long as it retains significant connections with the child and that, unless New York declines to exercise jurisdiction, California has no authority to modify the decree.

Yvonne and Jitendra were divorced in New York in 1974. Yvonne received custody of their only child, Sunjay. Jitendra was granted visitation rights. In 1977 a New York court modified the support agreement and

---

[1]The Uniform Act is contained in Civil Code sections 5150-5174 and, unless otherwise indicated, statutory references are to the Civil Code. In New York the act is contained in sections 75-a to 75-z, McKinney's Domestic Relations Law.

enforced Yvonne's right to support. All parties continued to live in New York until April 1979 when Yvonne took Sunjay to California.[2] The parties agree that Jitendra was not notified of the move until Yvonne and Sunjay had left New York.

In July 1980 Jitendra hired California counsel who registered the New York custody decree in California and procured a writ of habeas corpus directing Yvonne to produce Sunjay in court. Jitendra's visitation rights were enforced in that proceeding. Jitendra later served Yvonne with a motion in the New York court to modify the custody and visitation provisions of the New York order. On receipt of the New York papers, Yvonne sought an order to show cause in California to modify the visitation and support provisions of the New York order, to determine alleged spousal support arrearages, and to award attorneys' fees. Jitendra moved to dismiss the custody/visitation proceeding for lack of subject matter jurisdiction; he also filed a motion to quash service in the child support proceedings for lack of in personam jurisdiction.

In supporting declarations, Jitendra alleged: He was personally served in New York and did not consent to exercise of personal jurisdiction; his only contact with California was the initiation of habeas corpus proceedings and registration of the New York decree; New York issued the initial custody decree and continues to have significant connections with Sunjay; Sunjay lived all his life in New York until removed to California; maternal grandparents and other relatives, neighbors, and friends live in New York and can testify to Sunjay's behavior and adjustment; Jitendra regularly exercised visitation rights with Sunjay until April 1979 when, without warning, Yvonne called from Tennessee to say she and Sunjay were on their way to California; Yvonne wrongfully removed Sunjay from New York; in the one telephone call she made to him, on arrival in California, she gave him a telephone number, not her own; he was unable to make contact; after six months he finally located her (address, no telephone) through her parents in New York; Yvonne did not respond to numerous telephone messages and notes directed to her through others and did not acknowledge receipt of checks which he sent; a friend contacted her in April of 1980 and he himself initiated the habeas corpus proceedings to secure a two-week visit.

---

[2]The New York custody decree did not expressly forbid removal of Sunjay or place any restriction on Yvonne's choice of residence. The law of New York requires, however, that the custodial parent reside with the child in a location reasonably conducive to the exercise of visitation privileges. (See *Weiss* v. *Weiss* (1981) 52 N.Y.2d 170 [436 N.Y.S.2d 862, 418 N.E.2d 377]; *Sipos* v. *Sipos* (1980) 73 App.Div.2d 1055 [425 N.Y.S.2d 414]; *Application of Denberg* (1962) 34 Misc.2d 980 [229 N.Y.S.2d 831].) As will appear (fn. 3, p. 693, *post*), the New York court determined that Yvonne violated an "implied prohibition" against removing Sunjay to California.

In opposing declarations, Yvonne alleged: There were no visitation problems while she was in New York; she did not advise Jitendra in advance of their departure because she was afraid of him; she called him on the way to California and again after she arrived, giving him her brother's address and telephone number; Jitendra did not try to communicate with her or Sunjay until five months after their departure when he sent Sunjay a birthday card; Yvonne informed Jitendra of her telephone number as soon as she got one; she did not cash the checks because she felt he should pay "the entire amount of child support"; she at no time deprived Jitendra of his son—in fact, after the habeas corpus proceeding they made arrangements on summer and Christmas visitation.

Following a hearing, on January 19, 1981, the trial court found the service of process "adequate" and denied Jitendra's dismissal motion for the following reasons: "1. The closest contacts with the child's present and future living environment, present and predictable development, as well as available witnesses are in the State of California. [¶] 2. Respondent has sought, and received, assistance with enforcement of visitation rights by [the California court] having accepted and enforced the foreign New York decree. [The California court] can fairly adjudicate further similar issues as they arise. [¶] 3. The best interests of the child can best be gauged by the jurisdiction with the closest contacts with the child. The relative convenience of either party should not be a paramount consideration."

Jitendra seeks a writ of mandate and/or prohibition to dismiss the proceedings below or, alternatively, to stay such proceedings pending a determination by the State of New York as to whether it will continue to assume jurisdiction in this matter.

To date New York has not refrained from exercise of its jurisdiction. On January 21, 1981—two days after the respondent court's order—the trial court of New York entered an ex parte show cause order and, on March 25, 1981, determined it had jurisdiction and rendered its decision,[3]

---

[3]The memorandum decision provides in part: "It appears that from the date of the divorce decree until April 10, 1979, the defendant [Jitendra] fulfilled his support and alimony obligations as well as taking advantage of his visitation rights with his infant son. However, on or about April 10, 1979, the plaintiff [Yvonne], with her infant son, without warning or justification, left New York and set up residence in California. Defendant made numerous efforts to contact his ex-wife and determine the whereabouts of his son. Finally, having confirmed the plaintiff's address, the defendant traveled to California and petitioned the Court through a habeas corpus proceeding to allow him to visit with his son. This was accomplished and he was able to see his son for two weeks during August, 1980 and said contact with his off-spring was the first since April, 1979. [¶] The plaintiff has supplied the Court with a letter from her California attorney who had attached papers indicating that a proceeding to enforce support and alimony and determine

followed by a formal order on May 7, 1981.[4]

As to the requested adjudication of support and attorney's fees, Jitendra contends he had insufficient contacts with California for in personam jurisdiction and that use of the state courts in securing habeas corpus relief was not a "contact" for the purpose of a child support motion. With respect to the custody/visitation proceedings, Jitendra claims that (1) California lacks jurisdiction to modify the New York decree because of Yvonne's wrongful conduct in removing Sunjay from New York (§ 5157, subd. (2)); (2) California should decline to exercise jurisdiction because custody proceedings are pending in New York (§ 5155, subd. (1)); and (3) California has no authority to modify the New York decree unless New York declines to exercise its continuing jurisdicion to modify (§ 5163, subd. (1)).

We conclude that Jitendra had insufficient minimum contacts to establish personal jurisdiction (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 91-92 [56 L.Ed.2d 132, 98 S.Ct. 1690]) and that principles of fairness preclude use of Jitendra's habeas corpus proceedings as a contact to establish personal jurisdiction (*Titus* v. *Superior Court* (1972) 23 Cal. App.3d 792 [100 Cal.Rptr. 477]). Further, we agree that section 5163 is controlling in this case—that New York has continuing jurisdiction to modify its custody order and that California has no authority to modify that order unless New York declines jurisdiction.

arrearages is pending in California. However, the plaintiff does not oppose this application on the merits nor does she dispute the allegations submitted by the defendant in the moving papers. The plaintiff's only request is that this order to show cause be dismissed or in the alternative stayed pending a decision of the California action. [¶] The Court clearly has jurisdiction to hear this matter and render a decision on the merits. The Court is satisfied that the plaintiff wrongfully interfered with and withheld visitation rights provided by the judgment of this Court dated October 2, 1974 and will cancel any arrears that have occurred from April 11, 1979 until the present date and will suspend any future payments of alimony and child support until the plaintiff allows the defendant the opportunity to avail himself of his judicially decreed visitation rights. [¶] *It is clear that the plaintiff herein is obligated to reside with the child in a location reasonably conducive to the exercise of visitation privileges, and the plaintiff is therefore impliedly prohibited from removing the child to a distant place which would frustrate visitation. Sipos* v. *Sipos,* . . . 425 N.Y.S.2d 414; *Weiss* v. *Weiss,* . . . [436 N.Y.S.2d 862]." (Italics added.)

[4]The formal order provides in part: "[T]his Court retains continuing jurisdiction over the matters of alimony, child support and custody as between the parties herein . . . . [A]ny and all arrears of alimony and child support payable by defendant to plaintiff from April 11, 1979 until the present date are hereby cancelled in their entirety . . . . [A]ll future obligations of defendant to pay alimony and child support are hereby suspended until plaintiff allows defendant the opportunity to avail himself of his judicially decreed visitation rights by residing with the infant SUNJAY RICHARD at a location reasonably conducive to the exercise of said visitation rights . . . . [I]n all other respects the decree of divorce between plaintiff and defendant dated the 2nd day of October, 1974 shall remain unchanged and in full force and effect." In suspending future obligations to pay child support, the New York court granted Jitendra more relief than he requested.

## Subject Matter Jurisdiction

The Uniform Act, adopted in 44 states by 1981, was promulgated for the stated purposes of avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states. (Uniform Act, § 1; § 5150.)[5]

The jurisdictional grounds for making a child custody determination are set out in section 5152 of the Uniform Act. Sections that follow address due process rights of the parties and prescribe appropriate procedures. Other sections, crucial to our determination, articulate the circumstances or situations in which the courts may or should decline to *exercise* jurisdiction. The sections relied upon by Jitendra (§§ 5155, 5157, and 5163) fall in the latter category. We stress this point because both parties speak of either California or New York as lacking "jurisdiction" to act in the instant matter, when the crucial question is really whether the Uniform Act directs or allows exercise of jurisdiction. As shall appear, it is obvious that each state can claim to have jurisdiction from among the multifaceted components of section 5152. Indeed, this case is a good example of the "jurisdictional competition and conflict" (§ 5150) which the Uniform Act was designed to alleviate.

While the courts have given lip service to the policies provided by the Uniform Act, some have been reluctant to forego what they see as concurrent jurisdiction to proceed under the act. In no area has the confusion been greater than in the modification of out-of-state custody decrees.

Consistent with its goal of avoiding "relitigation of custody decisions of other states in this state insofar as feasible" (§ 1, subd. (6); § 5150, subd., (f)), the Uniform Act commands in section 13 (§ 5162) that the courts of this state shall recognize and enforce "an initial or modification decree" of a court of another state which had assumed jurisdiction under the terms of the act. The next section, section 14 of the Uniform Act (§ 5163), governs the authority of

---

[5]California adopted the act in 1973. New York adopted it in 1977. Neither state made any changes in the portions of the act relevant to our determination. For the sake of simplicity, we make no reference to the New York statute; instead, reference will be to the equivalent sections of the Uniform Act.

California to modify an out-of-state decree.[6] Section 5163 provides: "(1) If a court of another state has made a custody decree, a court of this state *shall not modify that decree* unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." (Italics added.)

Professor Bodenheimer, reporter for the special committee which drafted the Uniform Act, interpreted the section's language—"this state shall not modify"—as meaning precisely what it says: "In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered. . . . [¶] Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*" (Italics added; Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Fam.L.Q. 203, 214-215.)

■ The first question, then, is whether New York, which rendered the initial decree in this case, now has jurisdiction under the "jurisdictional prerequisites" of the Uniform Act.[7] New York obtained jurisdiction for the

---

[6]"Once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 [§ 5157] and 14 [§ 5163]." (Commissioner's Notes (1979) ed.) U. Laws Ann., Child Custody Jurisdiction, § 6, p. 135.) Section 5157 incorporates the "clean hands" doctrine.

[7]A state acquires jurisdiction under the provisions of section 3 of the Uniform Act, section 5152 of the Civil Code. Secton 5152 provides: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met: [¶] (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state. [¶] (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's

initial decree under the first subdivision of section 3 of the Uniform Act (§ 5152, subd. (1)(a)) as Sunjay's "home state."[8] After Sunjay was removed to California, however, New York's jurisdiction to modify its decree was conditioned on the second subdivision of section 3 of the Uniform Act (§ 5152, subd. (1)(b)) and depended, inter alia, on continued "significant connection" of Sunjay and at least one of his parents with the State of New York.

The evidence is uncontested that Jitendra is a full time resident of New York and that Sunjay's maternal grandparents and numerous family friends, relatives, doctors, and teachers continue to live in New York. Yvonne did not dispute that Sunjay, despite an absence of a year and a half, maintained these connections with New York and that evidence concerning his past and future familial, social, and educational welfare was available in that state.

Respondent court failed to consider the provisions of section 5163. Reviewing the uncontested evidence, the court concluded that California had the "*closest* contacts" with the child and found that determinative. The court's finding, by implication, however, acknowledges that New York continued to have significant connection with Sunjay. Respondent court treated the competing jurisdictional claims of the New York and California residents as though they were involved in an initial custody dispute, with competing concurrent jurisdiction.[9] Under section 5163, however, New York's continuing authority to modify its decree remains exclusive and unabated—"a court of this state shall not modify" (§ 5163, subd. (1))—so long as that state has significant connection with Sunjay, despite his presence here or other connections with California. The

---

present or future care, protection, training, and personal relationships. [¶] (c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. [¶] (d) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction. [¶] (2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction of a court of this state to make a child custody determination. [¶] (3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

[8]"Home state" is defined in section 1 of the Uniform Act (§ 5151) as "the state in which the child immediately preceeding the time involved lived with . . . a parent . . . for at least six consecutive months . . . .Periods of temporary absence of any of the named persons are considered as part of the six month or other period."

[9]In such predecree battles, a stated goal of the Uniform Act is to "Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection . . . ." (§ 5150.)

commissioners' note to this section of the Uniform Act makes clear that New York would lose jurisdiction in this case only if "all persons involved have moved away or the contact with the state has otherwise become slight . . . ." (9 U. Laws Ann. (1979 ed.) § 14, p. 154.)

The conclusion is inescapable that New York falls within the provisions of subdivision (1)(a) of section 5163 as a state which now has jurisdiction "under jurisdictional prerequisites substantially in accordance with this title."

Professor Bodenheimer described a situation remarkably similar to that before us: "A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years." (Bodenheimer, *Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws* (1969) 22 Vand.L.Rev. 1207, 1237.)

Thus, in accord with the letter of section 5163 and its purpose "to achieve greater stability of custody arrangements and avoid forum shopping" (9 U.Laws Ann. (1979 ed.) p. 154, Comrs. Note), *all* petitions for modification must be addressed to the state which rendered the original decree if that state had and retains jurisdiction under the standards of the act. (*Id.; Palm* v. *Superior Court* (1979) 97 Cal.App.3d 456, 468 [158 Cal.Rptr. 786]; *In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013, 1019 [145 Cal.Rptr. 325].)

In support of her claim that California has jurisdiction to modify the New York decree, Yvonne relies upon what has been termed the "myth of concurrent modification jurisdiction." (Bodeneimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, supra,* 14 Fam.L.Q. 203, 216.) Under Yvonne's analysis, one starts with section 5152, rather than section 5163: California has jurisdiction as Sunjay's "home state" (§ 5152, subd. (1)(a)); New York has some connection with Sunjay (§ 5152, subd. (1)(b)). Yvonne then considers

which forum has greater connection with the child and concludes, as did the trial court, that California has the "closest" connections.[10]

Yvonne is not alone in the confusion engendered by the failure to recognize the applicability of section 5163 whenever a *modification* of jurisdiction is involved. California appellate courts have played some part in perpetuating the myth of concurrent modification jurisdiction.[11] The confusion can be avoided by clearly distinguishing between initial and modification jurisdiction.[12]

*Initial* jurisdiction is determined by the guidelines of section 5152, which point to the state with the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform Act. (§ 5162; Bodenheimer, 65 Cal.L.Rev. 978, 983-984.) California is not effectively enforcing the New York decree if it modifies the decree as soon as the child has spent six months within its borders. Under section 5163, the strong presumption is that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child. If that state has lost contact, the analysis begins again with section 5152 to determine which other state has closest contact.[13]

---

[10]Under this analysis it is easy to see how presence of the child becomes a disproportionately controlling factor, despite the admonition in section 5152 that "physical presence in this state of the child, or of child and one of the contestants, is not alone sufficient to confer jurisdiction" (subd. (2)), and "physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody" (subd. (3)).

[11]Indeed, several of Jitendra's arguments concede concurrent modification jurisdiction to California, but urge that California would abuse its discretion in exercising jurisdiction.

[12]Some California cases dealing with modification of either foreign or California decrees have failed to mention section 5163. Even those that recognize the section have tended to proceed, nevertheless, on an analysis that assumes "concurrent" modification jurisdiction. (See, e.g., *In re Marriage of Leonard* (1981) 122 Cal.App.3d 433 [175 Cal.Rptr. 903]; *Allison* v. *Superior Court* (1979) 99 Cal.App.3d 993 [160 Cal.Rptr. 309]; *Palm* v. *Superior Court, supra,* 97 Cal.App.3d 456; *In re Marriage of Steiner* (1979) 89 Cal.App.3d 363 [152 Cal.Rptr. 612]; *Schlumpf* v. *Superior Court,* (1978) 79 Cal.App.3d 892 [145 Cal.Rptr. 190]; *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298 [140 Cal.Rptr. 709]. For a more complete criticism of modification cases, see Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, supra,* 14 Fam.L.Q. 203.)

[13]For a good example of this process, see *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884 [168 Cal.Rptr. 345], where all members of the family had lost contact with Arizona, the decree state. The court then had to determine whether Tennessee or California was better suited to modify the decree.

Application of the provisions of section 5163 to the instant case compels the conclusion that New York has continuing jurisdiction to modify its decree so long as Jitendra resides there and continues to assert and exercise his custody/visitation rights.[14]

Having decided that New York has continuing jurisdiction to modify its decree, we briefly mention the next condition set out in section 5163 as possibly giving California jurisdiction to modify the the New York decree —has New York declined to exercise jurisdiction? The answer is clear on that point: in the ruling set out in footnotes 3 and 4, *ante,* New York unequivocally asserts its continuing jurisdiction over the matter of custody. If and when either party seeks modification of the custody/visitation decree, New York will have to decide whether to assume or decline to exercise its modification jurisdiction under section 3 (Uniform Act, [§ 5152]), using the criteria set out in section 7 (Uniform Act, [§ 5156]).[15] New York may then decide, as did California in *Schlumpf* v. *Superior Court, supra,* 79

---

[14]Yvonne makes an argument that *if* Jitendra wanted to maintain New York jurisdiction, he should have brought action before the six months had elapsed which established California as Sunjay's home state. This problem is addressed by the commissioners, who state: "Also if the father . . . continued to live in State 1, but lets his wife keep the children for several years [in State 2] without asserting his custody rights and without visits of the children in State 1, modification jurisdiction of State 1 would cease."

In the instant case, however, nothing indicates that Jitendra intentionally lost contact with his son. In fact, the parties disagree over whether Jitendra knew how to contact the child; he apparently tried. Here "several years" have not elapsed. We decline to set guidelines on just how long one parent can withdraw from his family in another state before losing the right to modify within the decree state.

[15]Section 5156 provides: "(1) A court which has jurisdiction under this title to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. [¶] (2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child. [¶] (3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others: [¶] (a) If another state is or recently was the child's home state. [¶] (b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants. [¶] (c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state. [¶] (d) If the parties have agreed on another forum which is no less appropriate. [¶] (e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 5150. [¶] (4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties. [¶] (5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be

Cal.App.3d 892, where the child and father had resided in another state for nine years, that the decree state is an inconvenient forum.[16]

On December 28, 1980, Congress enacted the Parental Kidnaping Prevention Act of 1980 (28 U.S.C. § 1738A) to implement the full faith and credit clause of the United States Constitution. The legislation did not become effective until July 1, 1981, and there may be some question whether it is retroactive (see *In re Marriage of Leonard, supra,* 122 Cal.App.3d 443). Like the Uniform Act, the federal law limits the exercise of jurisdiction to modify a sister-state decree and, for what it is worth, the federal legislation would compel the result we reach in the instant case.

The federal law provides that "(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State. . . ." Subdivision (f) provides: "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State *no longer has jurisdiction,* or it has declined to exercise such jurisdiction to modify such determination." (Italics added.)

In view of our conclusion that under the Uniform Act California has no authority to modify the New York decree so long as that state has

just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum. [¶] (6) The court may decline to exercise its jurisdiction under this title if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding. [¶] (7) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party. [¶] (8) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court. [¶] (9) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact."

[16]A final condition on the exercise of modification jurisdiction under section 5163—were New York to decline to exercise its continuing jurisdiction—is that California have jurisdiction. We do not have to reach the issue because so long as New York has jurisdiction and does not decline to exercise it, it is immaterial whether California would qualify under the jurisdictional prerequisites of the Uniform Act. (Actually, California would undoubtedly qualify as Sunjay's "home state.") (§ 5152, subd. (1)(a).)

jurisdiction and does not decline to exercise it, we do not have to reach Jitendra's alternative contention that California is required to decline exercise of subject matter jurisdiction under section 5155, subdivision (1), which governs simultaneous proceedings and requires California to decline to exercise its subject matter jurisdiction when a custody proceeding is pending in a sister state.[17] Further, we do not have to reach Jitendra's contention that, under subdivision (2) of section 5157, California should decline to exercise jurisdiction because of Yvonne's alleged wrongful conduct in removing Sunjay from New York.[18]

---

[17]Section 5155 provides: "(1) A court of this state shall not exercise its jurisdiction under this title if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this title, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. [¶] (2) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under Section 5159 and shall consult the child custody registry established under Section 5165 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state. [¶] (3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 5168 through 5171. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

[18]Section 5157 provides: "(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction for purposes of adjudication of custody if this is just and proper under the circumstances. [¶] (2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances. [¶] (3) Where the court declines to exercise jurisdiction upon petition for an initial custody decree pursuant to subdivision (1), the court shall notify the parent or other appropriate person and the prosecuting attorney of the appropriate jurisdiction in the other state. If a request to that effect is received from the other state, the court shall order the petitioner to appear with the child in a custody proceeding instituted in the other state in accordance with Section 5169. If no such request is made within a reasonable time after such notification, the court may entertain a petition to determine custody by the petitioner if it has jurisdiction pursuant to Section 5152. [¶] (4) Where the court refuses to assume jurisdiction to modify the custody decree of another state pursuant to subdivision (2) or pursuant to Section 5163, the court shall notify the person who has legal custody under the decree of the other state and the prosecuting attorney of the appropriate jurisdiction in the other state and may order the petitioner to return the child to the person who has legal custody. If it appears that the order will be ineffective and the legal custodian is ready to receive the child within a period of a few days, the court may place the child in a foster care

## In Personam Jurisdiction

There remains, however, the issue of personal jurisdiction with respect to child support and attorneys' fees. ■ Under *Kulko* v. *California Superior Court, supra,* 436 U.S. 84, California may not exercise personal jurisdiction over an out-of-state parent to modify an agreement for support of a child living in California unless jurisdiction is established through sufficient minimum contacts within the state. In spite of considerable showing of "effect" in California, the United States Supreme Court in *Kulko* indicated that a New York father should not be expected to undergo "the substantial financial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away" when his contact with the state had been insignificant. (*Id.,* at p. 97 [56 L.Ed.2d at p. 145].)

Yvonne argues that Jitendra had sufficient contact with California through his use of this state's courts in securing the habeas corpus order, which constituted a general appearance on his part. This court has held that neither execution of a guaranty agreement nor a special appearance in California to move for an order to quash service of a summons for lack of personal jurisdiction was sufficient to establish jurisdiction over a nonresident. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal. Rptr. 34, 546 P.2d 322].) Although *Sibley* distinguishes cases where nonresidents seek significant benefits from the activity in California, it holds that the imposition of jurisdiction should be both constitutionally justified and "fair."

Principles of fairness preclude the exercise of personal jurisdiction where connection with the state resulted from an effort to encourage visitation with the noncustodial parent. (*Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792.)[19] This is especially true in the instant case, where Jitendra was virtually forced into the California court because Yvonne

---

home for such period, pending return of the child to the legal custodian. At the same time, the court shall advise the petitioner that any petition for modification of custody must be directed to the appropriate court of the other state which has continuing jurisdiction, or, in the event that that court declines jurisdiction, to a court in a state which has jurisdiction pursuant to Section 5152. [¶] (5) In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorney's fees and the cost of returning the child to another state."

[19]"We perceive, moreover that the subject base of jurisdiction does not arise if the exercise of jurisdiction is not fair to the nonresident defendant and is unreasonable from the standpoint of the international and interstate systems . . . . We apprehend that it would be unfair and unreasonable to hold that a nonresident parent has submitted himself to the jurisdiction of another state merely by the act of sending his children to that state temporarily for the purpose of visiting with the other parent. It is a strong policy of the law to encourage the visitation of children with their parents. Such a policy should be fostered rather than thwarted." (*Id.,* at pp. 802-803.)

denied him his visitation rights. It would be grossly unfair to allow her now to claim that he thereby established "minimum contact" sufficient to establish personal jurisdiction.

Let a peremptory writ of mandate issue directing respondent court to quash service of process and to dismiss the custody/visitation proceedings.

Bird, C. J., Mosk, J., Richardson, J., Newman, J., Broussard, J., and Reynoso, J., concurred.