PATRICIA PARKER WILSON, (NOW SLOMANSKI), Plaintiff v. RANDALL EDWARD WILSON, BONEY EDWARD WILSON, JR. and GLENN L. WILSON, Defendants

No. COA95-219

(Filed 2 January 1996)

**Divorce and Separation § 499 (NCI4th)— child custody and visitation—original action in N.C.—child moves to Va.— jurisdiction for subsequent orders**

The trial court properly dismissed plaintiff-mother's motion to dismiss a child custody matter for lack of jurisdiction where plaintiff and defendant-father had instituted divorce proceedings; they agreed that plaintiff would have primary custody and defendant would have specified visitation privileges; in response to a motion by defendant for modification of his visitation schedule, a district court judge in North Carolina found that plaintiff would be moving to Richmond, Va. and taking the child with her, and ordered that the child be transported by air between Richmond and Wilmington, N.C., for visits with her father on the first weekend of each month; defendant subsequently moved to find plaintiff in contempt for petitioning the court in Virginia to modify the order requiring air transportation; the Virginia judge declined to exercise jurisdiction in a telephone conversation with the North Carolina judge; the North Carolina judge found plaintiff in willful contempt; defendant moved the court to require that the child fly for all of her visits with him; plaintiff moved for dismissal, contending that the North Carolina courts no longer had subject matter jurisdiction since the child's home state was now Virginia; the North Carolina judge found that North Carolina had continuing jurisdiction; and the Virginia judge assumed jurisdiction on behalf of the state courts of Virginia and suspended the requirement that the child fly for her visits. While a North Carolina court in seeking to modify the decree of another court would first need to meet the jurisdictional prerequisites of N.C.G.S. § 50A-3 before determining whether it is a more convenient forum under N.C.G.S. § 50A-7, the trial court here had already acquired initial jurisdiction and maintained jurisdiction by entering several orders. Additionally, the father and grandparents, who are parties to the action, remain in North Carolina.

**Am Jur 2d, Divorce and Separation §§ 232-234.**

WILSON v. WILSON

[121 N.C. App. 292 (1996)]

**Right to punish for contempt for failure to obey custody order either beyond power of jurisdiction of court or merely erroneous. 12 ALR2d 1095.**

**Obtaining long-arm jurisdiction over nonresident parent in filiation or support proceeding. 76 ALR3d 708.**

**When does state that issued previous custody determination have continuing jurisdiction under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A. 83 ALR4th 742.**

Judge GREENE concurring in the result.

Appeal by plaintiff from order entered 26 October 1994 by Judge Jacqueline Morris-Goodson in New Hanover County District Court. Heard in the Court of Appeals 16 November 1995.

*Shipman & Lea, by J. Albert Clyburn and James W. Lea, III, for plaintiff-appellant.*

*Johnson & Lambeth, by Carter T. Lambeth and Maynard M. Brown, for defendant-appellee.*

WYNN, Judge.

Plaintiff, Patricia Parker Wilson (now Slomanski), appeals the trial court's denial of her motion to dismiss for lack of subject matter jurisdiction. We affirm.

Ms. Slomanski and defendant Randall Edward Wilson ("the parties") are the parents of a minor daughter, Patricia Grace Wilson, the subject of this custody dispute.[1] In 1989, after instituting divorce proceedings, the parties agreed to joint custody of Patricia by giving Ms. Slomanski primary custody and Mr. Wilson specified visitation privileges.

In April 1992, in response to a motion by Mr. Wilson for modification of his visitation schedule, District Court Judge Jacqueline Morris-Goodson found as a fact that "effective June 15, 1992, the Plaintiff will be moving to Richmond (Virginia) and taking [Patricia] with her." Based on this finding, the court ordered that Patricia be transported by air between Richmond and Wilmington, North Carolina for visits with her father on the first weekend of each month.

---

1. The child's paternal grandparents, Boney Edward Wilson, Jr. and his wife, Glenn L. Wilson were added as parties.

In February 1993, Mr. Wilson moved the court to find Ms. Slomanski in contempt for petitioning the Juvenile and Domestic Relations District Court of the County of Henrico in the Commonwealth of Virginia ("Juvenile Court") to modify Judge Morris-Goodson's order requiring air transportation for Patricia's first weekend visits. In a telephone conversation with Judge Morris-Goodson, Judge William G. Boice, Juvenile Court Judge for Henrico County, Virginia declined jurisdiction over the matter. Thereafter, Judge Morris-Goodson found Ms. Slomanski in willful contempt of court. This Court, in an unpublished opinion, reversed that order.

In September 1994, Mr. Wilson moved the court to require that Patricia fly for *all* of her visits with him. Ms. Slomanski responded by moving for dismissal contending that the North Carolina courts no longer had subject matter jurisdiction since Patricia's home state was now Virginia. Judge Morris-Goodson found that North Carolina had continuing jurisdiction over the matter and granted Mr. Wilson's motion. (On 7 December 1994, Judge Boice assumed jurisdiction on behalf of the state courts of Virginia and modified Judge Morris-Goodson's order by suspending the requirement that Patricia fly for her visits with Mr. Wilson).

From Judge Morris-Goodson's order, Ms. Slomanski appeals to this Court.

---

Ms. Slomanski contends that the trial court erred in refusing to relinquish jurisdiction over custody issues involving Patricia because the Commonwealth of Virginia was a more appropriate forum for the resolution of such issues under N.C. Gen. Stat. § 50A-7 (1990). We disagree.

Questions concerning subject matter jurisdiction in interstate custody disputes are generally governed by the Uniform Child Custody Jurisdiction Act (hereinafter "UCCJA"). *See also* 28 U.S.C.A. § 1738A (1995) commonly referred to as the "Parental Kidnapping Prevention Act" (PKPA). The UCCJA has been codified in North Carolina under Chapter 50A of the North Carolina General Statutes. *See also* Va. Code § 20-126(A) (1995) (codifying the UCCJA for Virginia).

N.C.G.S. § 50A-7(a) provides:

A Court which has jurisdiction under this Chapter to make an initial or modification decree *may* decline to exercise its jurisdic-

tion any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a Court of another state is a more appropriate forum.

(emphasis supplied).

Thus, N.C.G.S. § 50A-7(a) allows the trial court in its discretion to decline jurisdiction in instances when it determines that it is an inconvenient forum. In determining whether it is an inconvenient forum, the court may take into account the following factors:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

(3) If substantial evidence relevant to the child's present or future care, protection, training and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in G.S. 50A-1.

N.C.G.S. § 50A-7(c).

The record on appeal indicates that the trial court made fifteen detailed findings of fact essentially finding that "the Courts of North Carolina retain jurisdiction over the issues of child custody and support by virtue of the fact that support was paid by the Defendant in North Carolina and three of the four parties in this action live in Wilmington, North Carolina, and by virtue of the fact that the Plaintiff was moving to Virginia allegedly to go to school." The court then concluded that "it is in the present best interests of the minor child that this court retain jurisdiction over the issue of custody . . . ," and that "the court further finds that there has been no material or substantial change of circumstances surrounding the parties or subject matter of this proceeding which would warrant divesting of this Court of jurisdiction and that Plaintiff's Motion to Dismiss jurisdiction should be denied." These findings of fact are sufficient to show that North Carolina was a convenient forum for the continued exercise of jurisdiction under N.C.G.S. § 50A-7.

Moreover, we held in *Davis v. Davis*, 53 N.C. App. 531, 538, 281 S.E.2d 411, 415 (1981), that there is a strong bias toward allowing the state in which a decree has been entered to retain jurisdiction. In *Davis*, a case involving an issue quite similar to the one at hand, we quoted with approval the Uniform Law Commission's commentary on continuing jurisdiction:

> Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) [G.S. 50A-14(a)] declares that other states will defer to the continuing jurisdiction of another state as long as that state has jurisdiction under the standards of this act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [G.S. 50A-3].

*Davis*, 53 N.C. App. at 539, 281 S.E.2d at 415, quoting, 9 Uniform Laws Ann. 115, 292 (1968) (citations omitted).

Contrary to the separate concurring opinion, N.C.G.S. § 50A-3 is not the controlling statute for determining continuing jurisdiction in this case. N.C.G.S. § 50A-3 empowers courts of this state with "jurisdiction to make a child custody determination by initial or modification decree . . . ." Thus, a North Carolina court in seeking to *modify* the decree of another court, such as a Virginia court, would first need to meet the jurisdictional prerequisites of N.C.G.S. § 50A-3 before determining whether it is a more convenient forum under N.C.G.S. § 50A-7. In the subject case, however, the trial court of North Carolina had already acquired *initial* jurisdiction under N.C.G.S. § 50A-3 when Ms. Slomanski filed her complaint in New Hanover County District Court on 11 May 1989. *See In re Scearce*, 81 N.C. App. 531, 539, 345 S.E.2d 404, 409, *cert. denied*, 318 N.C. 415, 349 S.E.2d 589 (1986) (once jurisdiction of the court attaches to a child custody matter, it exists for all time, until the cause is fully and completely determined). Thereafter, the trial court maintained jurisdiction by entering several orders: an order which set forth a visitation schedule with the minor children after Mr. Wilson filed a motion to modify the parties' prior interim separation agreement; an order modifying the prior orders of

the court with reference to Mr. Wilson's visitation schedule and requiring the parties to split the cost of a round-trip airplane ticket from Richmond to Wilmington for transportation of the minor child; an order finding Ms. Slomanski in willful contempt of court for attempting to seek jurisdiction in Virginia; and an order requiring the minor child to be transported by air for all visitations with her father. The North Carolina court also communicated with the Virginia court by phone and exchanged information pertinent to the assumption of jurisdiction. During this telephone conference, the Virginia court declined jurisdiction and allowed jurisdiction to remain in North Carolina. *See Davis v. Davis*, 53 N.C. App. at 538, 281 S.E.2d at 414-15 (the trial court may communicate with a court of another state to "exchange information pertinent to the assumption of jurisdiction by either court with a view toward assuring that jurisdiction will be exercised by the more appropriate court . . . ."). Additionally, the father and grandparents remain residents of North Carolina.

We find that there is sufficient evidence that the North Carolina court did not decline jurisdiction and made the appropriate findings under N.C.G.S. § 50A-7; accordingly, we conclude that the New Hanover District Court properly entered its order of 26 October 1994.

The trial court's order is,

Affirmed.

Judge McGEE concurs.

Judge GREENE concurs in the result in a separate opinion.

Judge GREENE concurring in the result.

I agree that the findings of fact in this case "are sufficient to show that North Carolina was a convenient forum" for the disposition of this interstate custody modification hearing. The convenience of the forum, however, is not dispositive of whether the New Hanover District Court had jurisdiction to enter the 26 October 1994 order. The dispositive question is whether North Carolina has continuing jurisdiction to modify the original child custody order earlier entered in North Carolina. Although the issuance of the initial custody order provides continuing jurisdiction in *intrastate* child custody disputes, *Tate v. Tate*, 9 N.C. App. 681, 177 S.E.2d 455, 457 (1970), the initial

custody order is not dispositive of continuing jurisdiction in *inter-state* child custody disputes. In *interstate* child custody disputes, continuing jurisdiction exists in North Carolina only if, at the time of the modification request, it "has sufficient contact with the case to satisfy [N.C. Gen. Stat. § 50A-3]." *Davis v. Davis*, 53 N.C. App. 531, 539, 281 S.E.2d 411, 415 (1981); N.C.G.S. § 50-13.7(a) (1995) (modification of a child custody decree is "[s]ubject to the provisions" of the UCCJA); N.C.G.S. § 50A-7(a) (1989) (if the court has jurisdiction it "may decline to exercise" it).

In this case, because the child had resided in Virginia for some twenty months prior to October 1994, section 50A-3(a)(2) is the only portion of section 50A-3 that could vest North Carolina with jurisdiction. This section is known as the "significant connection" provision and requires that "the child and the child's parents, or the child and at least one contestant, have a significant connection with this State." N.C.G.S. § 50A-3(a)(2) (1989). This "significant connection" provision is satisfied as long as either parent or contestant remains in the state issuing the initial custody decree. *See Kumar v. Superior Court of Santa Clara County*, 652 P.2d 1003, 1010 (Cal. 1982); *see also* Brigitte M. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1237 (1969). This reading is consistent with the stated purposes of the UCCJA, i.e., to avoid re-litigation of custody decisions in other states, to avoid jurisdictional competition, and to deter unilateral removal of children. N.C.G.S. § 50A-1(a) (1989). This construction is also consistent with the express language of the PKPA which provides that jurisdiction of the initial decree state "continues as long as . . . such State remains the residence of the child or of any contestant." 28 U.S.C.A. § 1738A(d) (West 1994). Furthermore, to construe the "significant connection" provision otherwise would permit one parent to possibly divest jurisdiction from the state entering the initial decree simply by moving the child into another state for a period of time of at least six months. *Cf.* N.C.G.S. § 50A-8 (court may decline to exercise jurisdiction if the child has wrongfully been taken from another state).

Because the father was a resident of North Carolina at the time of the initial custody decree and at the time of the modification request, although the mother and the child had moved to Virginia, the New Hanover District Court had jurisdiction, pursuant to section 50A-3(a)(2), to enter its 26 October 1994 Order. For these reasons, I would affirm.