[No. D007712. Fourth Dist., Div. One. July 25, 1989.]

In re GLORIA F., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
DENNIS F., Defendant and Appellant.

578

COUNSEL

Robert F. Gusky, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace and Mary Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

BENKE, J.—In this case we deal with the questions whether California's jurisdiction over a minor pursuant to Welfare and Institutions Code section 300 continues even where all parties have left the state, and, if such jurisdiction continues, when it is appropriate to relinquish it to the forum which has greater contact with the parties. The object of our concern is Gloria F. (Gloria) who was born on April 15, 1978.

On September 3, 1987, the San Diego County Department of Social Services (Department) filed a petition pursuant to Civil Code[1] section 232 et seq., requesting Gloria be declared free from parental custody and control. In December 1987, Gloria's mother voluntarily relinquished her parental rights. On February 26, 1988, after a hearing, the trial court granted the petition with regard to appellant, Gloria's father. It found true allegations of cruel treatment and/or neglect within the meaning of section 232, subdivision (a)(2), and failure to maintain a parental relationship with the child within the meaning of section 232, subdivision (a)(7). The court made these findings although by the time of the hearing all interested parties to the action were residing in the State of Michigan.

---

[1] All statutory references are to the Civil Code unless otherwise specified.

Appellant's principal contentions on appeal are that the trial court was without jurisdiction to conduct the section 232 hearing and if the court had jurisdiction, it nonetheless abused its discretion in hearing the case inasmuch as California was by then an inappropriate forum. We conclude California had continuing jurisdiction in this case to conduct the section 232 hearing. However, we agree with appellant's assertion the trial court abused its discretion since, on the facts of this case, Michigan was the more appropriate forum to decide what disposition was the best for Gloria.

## FACTS

In 1981 the marriage of her parents was dissolved and custody of Gloria and her younger sister Marjorie was given to appellant. The girls and appellant, a Marine stationed at Camp Pendleton, lived with his girlfriend Melody. The girls' natural mother was apparently in a mental hospital in Michigan, the state where the maternal and paternal grandparents resided. On June 17, 1983, Gloria and her sister were made dependent children of the Orange County Superior Court pursuant to Welfare and Institutions Code former section 300, subdivision (d) (Stats. 1982, ch. 977, § 2.5, p. 3502), based on unexplained injuries to, and cruel treatment of, Marjorie. On being placed in protective detention, it was determined Gloria exhibited physical evidence she had been sexually molested. Gloria stated she was often touched in the vaginal area by her father, mother and "the priest." Appellant denied any sexual contact with the child. Eventually, a plan to reunite the family was undertaken and dependent status was terminated on March 26, 1984. Appellant and Melody then married and a third child, Ryan, was born.

On August 24, 1984, a petition was filed requesting Gloria be made a dependent child of the Orange County Superior Court. The petition alleged appellant had physically abused the girls and sexually abused Gloria. Gloria was placed in protective detention. Marjorie and Ryan remained in the home. On January 18, 1985, a true finding was made on count three of the petition which charged neglect. This finding was based on Gloria's allegation she was sexually molested and upon the additional grounds she exhibited a level of sexual awareness unusual among children her age and she frequently "acted out" sexually. Count three also alleged physical abuse by Melody. Counts one and two of the petition, which specifically alleged appellant molested Gloria, were dismissed. Appellant did not contest the finding. Appellant having become a resident of San Diego County, the case was transferred to that county's superior court.

Custody of Gloria was taken from appellant. However, a reunification plan was signed by appellant on April 3, 1985. The plan provided no corporal punishment be inflicted on Gloria, frequent supervised visits occur

between Gloria, appellant and Melody, and family therapy for appellant and Melody be undertaken.

Even prior to the reunification plan, Gloria's maternal grandparents, who lived in Michigan, offered their home as a placement for her. Gloria's mother was living in Michigan, apparently near her parents. The social worker contemplated a visit by Gloria to her grandparents in Michigan and possible placement in their home.

On July 1, 1985, the court authorized Gloria to visit her maternal grandparents for 30 days. Gloria did well in the home and the social services agency in Michigan recommended Gloria be placed with her grandparents. On October 16, 1985, the San Diego Superior Court court made such an order.

By April 1986, Gloria's options began to narrow. It was the conclusion of the Department that reunification of Gloria and appellant was unlikely. Appellant's compliance with the reunification plan was superficial and he continued to deny he had sexually abused Gloria. He had not visited Gloria and he had stopped attending counseling sessions. The Department report noted appellant would be leaving the Marine Corps in June and he planned to return to Michigan with his family. It also appeared that a long-term placement with the maternal grandparents was not possible and that because of psychiatric problems, Gloria's mother would probably not be able to care for her, at least not in the near future. During this time, Gloria continued to do well and was having periodic visits with her mother. Indeed, the Department did not believe adoption was a realistic plan since Gloria's mother was at that time interested in custody and other relatives were willing to care for Gloria. The Department also did not recommend pursuing guardianship proceedings with the grandparents but believed such a course might be possible in the future. It was recommended Gloria continue to be placed with her grandparents and that a psychiatric evaluation of her mother be conducted. The court accepted these recommendations.

In September 1986, the Department informed the court that all parties were now in Michigan and that Gloria's circumstances had changed for the worse. Her maternal grandparents no longer wished to keep her in their home. The social service agency in Michigan recommended that since all parties were now in Michigan, it would be best not to return Gloria to California but instead place her in a foster home in Michigan. Gloria was therefore placed in foster care by the Michigan agency.

In March 1987, the Michigan social service agency informed the Department that all parties to the case believed it was best for Gloria to be placed for adoption in Michigan. Gloria's foster parents in Michigan were interest-

ed in adopting her and had agreed to allow the grandparents to have a significant role in her life.

In April 1987, the Michigan social service agency requested the Department commence proceedings to free Gloria from the custody and control of her parents so she could be adopted. It was the opinion of the Department that Gloria was adoptable and that while her parents had maintained contact with her, neither was in a position to exercise proper parental control. The Department specifically believed appellant showed no interest in the reunification plan.

On September 3, 1987, the Department filed a petition requesting Gloria be freed from the custody and control of her parents pursuant to section 232. Appellant and Gloria were not present at the section 232 hearing freeing Gloria from appellant's custody and control. Nor were the maternal grandparents, foster parents or any Michigan social worker. Appellant presented no witnesses.

The trial court concluded the allegation of abandonment had not been proved. It did, however, find true the allegations made pursuant to section 232, subdivisions (a)(2), (a)(7). The court found reasonable efforts were made at reunification and that it would be detrimental to return Gloria to the custody of appellant.

## DISCUSSION

Appellant argues since Gloria, her parents, her grandparents, the couple who wished to adopt her, the social worker who had contact with her and the foster home in which California placed her and in which she lived for two years were all in Michigan, the trial court was without jurisdiction to declare Gloria free from the custody and control of her parents. Appellant further argues that even if California had jurisdiction, the trial court abused its discretion when it failed to decline exercise of that jurisdiction pursuant to the inconvenient forum provisions of section 5156.

### A. *Jurisdiction*

■ The Uniform Child Custody Jurisdiction Act (the Uniform Act/UCCJA) (§ 5150 et seq.) is the exclusive method in California for determining subject matter jurisdiction in custody cases. (*People* v. *Beach* (1987) 194 Cal.App.3d 955, 963 [240 Cal.Rptr. 50]; *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1013 [202 Cal.Rptr. 490].)

In *Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 695 [186 Cal.Rptr. 772, 652 P.2d 1003], the court noted the Uniform Act "was promulgated for the stated purpose of avoiding jurisdictional competition and conflict,

promoting interstate cooperation, litigating custody where the child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states."

Removing a child from the custody and control of its parents pursuant to section 232 is an ultimate custody determination and the jurisdiction to make such an order is controlled by the UCCJA. (See § 5151, subds. (2), (3);[2] see also *Souza v. Superior Court* (1987) 193 Cal.App.3d 1304, 1309-1310 [238 Cal.Rptr. 892]; *Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 487-488 [223 Cal.Rptr. 707]; Donigan, *Child Neglect and Dependency Actions: Uncertainty Under the Uniform Child Custody Jurisdiction Act* (1985) 49 Albany L.Rev. 787, 814-816.)

With regard to jurisdiction the Uniform Act states: "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met: (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

"(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

"(d) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this

---

[2] " 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person." (§ 5151, subd. (2).)

" 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage, or legal separation, and includes child neglect and dependency proceedings." (§ 5151, subd. (3).)

state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination." (§ 5152.)

■ The Department contends the Uniform Act is not applicable here because no jurisdictional conflict existed with any other state. It argues that without such a conflict it is inappropriate and, indeed, impossible to invoke the provisions of the Uniform Act. The Department cites no authority for this proposition and we find none. We conclude the position is without merit.

First, as we have noted, case law indicates the UCCJA is the exclusive method in California for determining subject matter jurisdiction in custody cases. (*People* v. *Beach, supra,* 194 Cal.App.3d at p. 963; *Plas* v. *Superior Court, supra,* 155 Cal.App.3d at p. 1013.)

Those cases are clearly correct. Section 5150 defines the purposes of the Uniform Act. Nothing in that section indicates the act and its jurisdictional requirements apply only when a present conflict exists, i.e., when custody actions are proceeding in the courts of more than one state. Indeed section 5150, subdivision (c), states that one of the purposes of the act is to "[a]ssure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state." Thus the act is not meant merely to mediate jurisdictional disputes but to direct litigation to the state best able to resolve it.

We further note that under section 5161 a custody decree rendered in California is binding in this state only if the rendering court had jurisdiction under section 5152. Moreover, a custody decree under the Uniform Act is entitled to interstate recognition only if issued by a state "which had assumed jurisdiction under statutory provisions substantially in accordance with this title or which was made under factual circumstances meeting the jurisdictional standards of the title . . . ." (§ 5162; UCCJA, com. to § 13 (1968); see also § 5163; UCCJA, com. to § 14 (1968).) The Uniform Act clearly contemplates that all custody decrees made in states that have enacted the UCCJA will be made only when jurisdiction exists under the act. Thus, the act's purpose to "[a]void jurisdiction competition and conflict

with courts of other states in matters of child custody" (§ 5150, subd. (a)) is directed not just to present conflicts but to the potential for conflicts in the future. The jurisdictional requirements, therefore, of section 5152 apply to all custody cases in California, not just to those where a present conflict exists. They therefore apply in this case.

■ Once initial jurisdiction is established in a state, that state generally has continuing jurisdictional primacy, i.e., once a state with jurisdiction under the Uniform Act has made a custody order, that order may not be modified by the courts of another state. (§ 5162; see also *Kumar* v. *Superior Court, supra,* 32 Cal.3d at pp. 695-696.) ■ In this case, by virtue of section 5152, subdivision (1)(a), California had jurisdiction under the Uniform Act to make a determination of custody at the time it declared Gloria a dependent child under the provisions of Welfare and Institutions Code section 300. Gloria, her parents and their familial problems all were located in this state. The question posed is whether this jurisdiction ended when Gloria and her parents left this state.

■ Clearly, continuing exclusive jurisdiction is not without limits. The Uniform Act states: "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." (§ 5163, subd. (1).)

In discussing the concepts of continuing jurisdiction and its lapse, our Supreme Court has stated: "Professor Bodenheimer, reporter for the special committee which drafted the Uniform Act, interpreted the section's language—'this state shall not modify'—as meaning precisely what it says: 'In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jursidiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered. . . . [¶]Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*' (Italics added; Bodenheimer, *Interstate Custody: Initial*

*Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Fam.L.Q. 203, 214-215.)" (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 696.) (See also Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Fam.L.Q. 203, 224-225.)

In *In Re Marriage of Steiner* (1979) 89 Cal.App.3d 363, 371 [152 Cal.Rptr. 612], it was recognized initial jurisdiction does not alone confer modification jurisdiction. The court stated: "[I]t is apparent that the child and either or both of the parents can move away from the court of the state issuing the initial custody decree, thus losing contact with the state where the initial decree was rendered or the child's contact with the state may otherwise become slight. In such a situation a California court which issued the initial decree, acting in conformity with the purposes of the Act, would not have modification jurisdiction under either subdivision (1)(a) or (1)(b) of section 5152. Accordingly, a state should not assume the authority to modify a custody decree solely upon the fact that it was the state that initially made the custody determination."

 Appellant argues California lost modification jurisdiction in this case at that point in time when all parties moved away. We, however, conclude it did not. We believe a Welfare and Institutions Code section 300 proceeding at which a minor is declared a ward of the court creates a relationship between the child and state which is fundamentally different than is present in a parental custody dispute. In the latter situation the state serves primarily as an arbiter. In the former, a special custodial relationship is created between the court and the subject minor. As a result, while the manner in which jurisdiction is created under the act is the same in both kinds of cases, how and when that jurisdiction may be modified by another state must necessarily differ.

An examination of California's dependency statutes reveals the active role our juvenile courts are required to exert over minors in dependency proceedings. Virtually every action taken on a minor's behalf must have court supervision and approval. (See Welf. & Inst. Code, §§ 303, 305, 361 et seq.) This judicial control over the minor's well-being is not only required, it is subject to extensive internal judical review processes which increase in intensity as the minor is moved closer to permanent removal from his parents. (Welf. & Inst. Code, §§ 364, 366, 366.21, subds. (a), (f), (g), (i), 366.26.)

Moreover, the dependency statutory scheme clearly contemplates the juvenile court may send the child outside the county where the court sits and indeed, even out of the state. However, if the placement outside the county or state is deemed not to be operating in the child's interest, it is the

court's responsibility to assure the minor is then moved into another disposition which may be more suitable. While deference is given to the location of parents' residences, never during this statutorily compelled and controlled search process is it contemplated the court will lose jurisdiction to act in the minor's best interests merely because the parents have moved away or the child has been sent from the geographical boundaries of the supervising court. As occurred here, the court might try a placement in another state, near parents, which placement fails and thereafter find it necessary to order the child back to this state. To suggest a court cannot issue such orders in a dependency procedure is to either impose a limitation on the variety of alternatives a court may take lest it lose its jurisdiction or suffer a loss of jurisdiction, potentially leaving a minor without adequate supervision or resources in another state.

We find no provision within the jurisdictional statutes of the UCCJA which divests California's jurisdiction in the midst of such structured dependency supervision. Under such circumstances the state of California has assumed the normal parental control. For purposes of the UCCJA, the minor has not "moved away" from this state.

Given the structure of California's dependency statutes, we conclude the court here had jurisdiction to proceed with the section 232 hearing.

### B. *Inconvenient Forum*

■ Appellant argues even if jurisdiction existed, the trial court erred in failing to declare California an inconvenient forum pursuant to section 5156. Specifically appellant argues that while the trial court believed California was an inconvenient forum and that the matter could better be resolved in Michigan, it erroneously believed itself compelled to proceed with the case. We agree.

After the parties completed presentation of evidence, the trial court asked why, if all the persons involved were now in Michigan, had that state not taken over the case. The court noted it did not have the benefit of appellant's testimony because he was unable to come to California. Appellant's counsel then requested a continuance of 60 days to allow the Department to investigate transferring the case to Michigan. The trial court noted to do so raised serious problems concerning what action Michigan would take and how long such action would require. Appellant's counsel then requested a shorter delay so the court's questions could be answered. The court denied the request.

After a recess, the trial judge noted he had discussed his concerns with another judge who suggested a telephone call be made to Michigan to determine what procedures would be followed in that state in the event it

was transferred. The trial court agreed with the suggestion. The county counsel, however, resisted this eminently reasonable suggestion by citing the Interstate Compact on the Placement of Children (Compact). (§ 265, art. 5, subd. (a).) The Compact states: "The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state." (*Ibid.*)

Appellant's counsel stated he had talked with another attorney during the recess and that attorney agreed with the county counsel. Based on these representations, the trial court decided to retain the case and proceed.

We conclude the trial court's intuitive conclusion that California was not an appropriate forum for the resolution of custody issues in this case was correct and it erred in accepting the argument he had no discretion to transfer the case to another jurisdiction or confer with authorities in Michigan concerning that state's ability and desire to hear the case.

The UCCJA in section 5156 states that a court with jurisdiction to make a custody decree may nonetheless decline to exercise that jurisdiction at any time before making a decree if it concludes it is an inconvenient forum and another state is a more appropriate forum. Such a finding may be made on the motion of a party or on the court's own motion. In making its determination on appropriate forum, the court is to "consider if it is in the interest of the child that another state assume jurisdiction." In so determining the court may consider, among others, the following factors: "(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others: (a) If another state is or recently was the child's home state.

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

"(d) If the parties have agreed on another forum which is no less appropriate.

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 5150." (§ 5156, subd. (3)(a)-(e).)

The section specifically states the trial court, before deciding to decline or retain jurisdiction may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court. (§ 5156, subd. (4).) If the trial court finds it is an inconvenient forum and another state is a more appropriate one, it may dismiss the proceeding, or it may stay the proceeding on the condition that a custody proceeding be promptly commenced in another state or on any other conditions which may be just and proper. (§ 5156, subd. (5).)

The trial court erred when it concluded it had no discretion to determine California was an inappropriate forum for the resolution of the present case. (See *Plas* v. *Superior Court, supra,* 155 Cal.App.3d at pp. 1018-1022; *Bosse* v. *Superior Court* (1979) 89 Cal.App.3d 440, 443-445 [152 Cal.Rptr. 665]; *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298, 308-310 [140 Cal.Rptr. 709].)

Because we resolve this case on the issues of jurisdiction and inconvenient forum, appellant's remaining issues need not be addressed.

The judgment is reversed. The superior court is directed to hold a review hearing consistent with the conclusions reached herein respecting whether the doctrine of inconvenient forum should be applied and this matter heard in Michigan.

Kremer, P. J., and Huffman, J., concurred.