[No. G021199. Fourth Dist., Div. Three. Mar. 31, 1999.]

JOHN L. BROWN, Plaintiff and Appellant, v.
SHELLEY ANN BROWN, Defendant and Respondent.

**COUNSEL**

Johnson & Flyer and David R. Flyer for Plaintiff and Appellant.

Irene Casson Gilbert; and William M. Hilton for Defendant and Respondent.

**OPINION**

**SONENSHINE, J.**—We have met these litigants before. In a relentless struggle for custody of his daughter S., now seven years old, John L. Brown has forum-shopped his way through three continents. In California alone, he and the child's mother, Shelley Ann Brown, have invoked the jurisdiction of the state and federal courts at the trial and appellate levels. Their intransigent hostilities harmed their daughter, specifically by prolonging her stay in the dependency system, with its attendant uncertainties.

This time around, John challenges the family law court's order granting Shelley's motion to dismiss John's order to show cause for change of custody and visitation rights. Finding the appeal wholly without merit, we affirm.

I

John and Shelley met in 1986, when John, a peripatetic Australian-born international entrepreneur, was in California on business. Shelley accompanied him to Vienna, where the couple took up residence, marrying in July 1987. In 1991, when they separated, Shelley was pregnant. She returned to California, giving birth to S. in January 1992.

Three weeks later, mother and daughter rejoined John in Vienna, but the husband/wife relationship remained rocky. When S. was five months old, Shelley, who was pursuing studies in photography, took a series of highly inappropriate black and white photographs of the naked child, posed with nude men. John found the photographs in September. After showing them to his lawyer, he decided to keep them on hold for leverage in anticipated dissolution proceedings. In November, there was an altercation with Shelley. John took the baby from the sitter's house, crossed the border into Germany, sent copies of the photographs to the authorities in Vienna, and absconded to Australia with the child.

Shelley obtained an ex parte order in Vienna for physical custody of the minor and initiated efforts in Australia to secure her return. But John, armed

with the photographs, obtained temporary custody of S. The Australian court eventually determined Austria had jurisdiction under the Hague Convention on the Civil Aspects of International Child Abduction (Convention), implemented in the United States in the International Child Abduction Remedies Act (ICARA), 42 United States Code section 11601 et seq.[1]

Shelley and S. returned to Vienna. For the next year, Shelley's progress was monitored daily by the child welfare agency, acting at the direction of Vienna's juvenile court. Meanwhile, John conducted an international media blitz, inter alia utilizing tabloids and talk shows to call attention to Shelley's miscreant conduct. He rarely visited Austria. No dependency petition was ever filed there in light of Shelley's cooperation with social services and the strong mother/daughter bond.

In December 1993, when S. was almost two years old and the Austrian juvenile court matter was winding down, Shelley and the minor flew to California for a holiday visit with Shelley's family. John arrived only a few steps behind and promptly filed an ex parte application for S.'s custody, handing out copies of the photographs to the police and the Orange County Social Services Agency (SSA). On January 5, 1994, S. was taken away from Shelley.

The SSA dependency petition alleged the minor had been sexually abused by her mother and was at substantial risk of further abuse; it also alleged John knew or had reason to know of Shelley's acts and failed to protect S. The juvenile court exercised emergency jurisdiction under the Uniform Child Custody Jurisdiction Act (the Act), codified in Family Code section 3400 et seq. Shelley's motion to dismiss the petition for lack of jurisdiction under the Act was denied.

By February, hostilities between the parents had escalated to the point that the minor's attorney sought—and the parties stipulated to—the addition of a count in the dependency petition under Welfare and Institutions Code section 300, subdivision (c), alleging S.'s risk of suffering serious emotional damage due to her parents' "ongoing and continuous . . . intense custody battle," which by this time had sucked into its vortex the maternal and paternal relatives. On March 1, the court determined it had dependency jurisdiction and found the petition true.

A few weeks later, the Austrian court concluded the juvenile proceedings in Vienna, determining it was in S.'s best interest to remain with Shelley,

---

[1]The Convention " 'establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained. . . .' "(*Application of Ponath* (D. Utah 1993) 829 F.Supp. 363, 364.)

who was awarded sole custody.[2] John filed an appeal in Austria. In early April, the Orange County Juvenile Court, coming to a conclusion diametrically opposed to that of the Austrian court, declared S. a dependent child, removed her from Shelley's custody and placed her with John under SSA's supervision. Shelley appealed from that judgment.

Shelley also filed a petition in the federal district court for return of S. to Austria under the Convention. The district court took judicial notice of the dependency file, particularly its materials relating to the sexual abuse allegations. It confirmed Austria was S.'s habitual residence and her retention in California by SSA was a "wrongful retention" under the Convention. But it declined to order her return to Austria, invoking the "grave risk" exception which permits a court to dismiss a petition for return where the child might be exposed to physical and psychological harm or otherwise placed in an intolerable situation. On July 7, it dismissed the petition.

While Shelley's appeal from that decision was pending in the Ninth Circuit, the juvenile court at the six-month review hearing found continued supervision necessary due, not to sexual abuse concerns, but to John's and Shelley's "inability to resolve [their dispute] without court intervention" and the risk "that one parent will interfere with [the] other's contact or custody of the minor." The court gave Shelley custody during the week, John on weekends. Describing both parents as "obsessive," it directed them to undergo counseling "to address working together on issues affecting [S.]."

In April 1995, we dismissed Shelley's appeal of the jurisdictional and dispositional judgment. We explained our hands were tied by the district court's denial of Shelley's petition for S.'s return to Austria: We found that order subsumed the Act and dependency jurisdiction issues, leaving us without power to grant relief. And we noted the juvenile court's order for shared custody mooted all other issues.

In July, the juvenile court, satisfied that S. no longer needed protection, terminated jurisdiction, giving Shelley sole physical custody and John visitation rights. Due to illness, Shelley could not immediately return to her home in Austria. For three months, she and S. remained in California. John did not visit, contact or support S. during that time. In October, mother and daughter finally went home to Vienna. At about that time, Austria's appellate court rejected as without merit John's appeal from the custody order.

---

[2]In October 1994, the order was registered in California pursuant to Family Code sections 3416, 3417 and 3424.

On July 1, 1996, the Ninth Circuit dismissed Shelley's appeal from the district court's denial of her petition under the Convention. It stated, "Because [S.] is no longer in the custody or under the protection of Orange County authorities and is no longer subject to the jurisdiction of the district court, this appeal is moot."

John immediately filed an order to show cause in family court in Orange County and managed to obtain a *default* order granting him sole legal and physical custody of the child. However, as it turned out, he had neither provided Shelley with notice of the continued date of the hearing nor disclosed to the court the existence of the Austrian court order awarding Shelley sole custody. Shelley's motion to set aside the order was granted on July 30, on grounds of surprise, fraud and the court's own excusable neglect in failing to undertake a review of the pertinent files.

The very next day, the Austrian court denied John's petition for S.'s return to California and placement in his custody. It found the petition without "legal basis," noting the asserted factual grounds were belied by the record. Specifically, it found Shelley had never relinquished her Vienna residence, but was forced to stay in the United States due to the dependency proceedings; she had enjoyed sole, not shared, custody of S. for several years, thus. John's claim of kidnapping was "excluded by definition"; no conditions for S.'s removal from her mother's care existed under the Convention; and even if such conditions existed, John's petition could not be granted because he "did not have custody and an untenable situation would be created for the child if she were returned to him. She would be torn from her []familiar surroundings in Vienna which would undoubtedly cause emotional harm to the child."

On August 23, John returned to California and filed a second order to show cause, again seeking to modify child custody on the basis of changed circumstances—Shelley's "wrongful removal" of S. from California in violation of "a federal order barring such removal." On Shelley's motion, the case was dismissed for lack of subject matter jurisdiction and on the basis of forum non conveniens. That order generated this utterly meritless appeal.[3]

## II

The central thesis of John's appeal can be stated in three sentences: The federal district court denied Shelley's petition for S.'s return to Austria.

---

[3]We are disturbed by the misrepresentations and evasive oversights in John's briefs. He presents a distorted and, in some instances, outright false history of the case. It is one thing to make legal arguments without a solid foundation; it is quite another to make factual statements which are unsupported or contradicted by the record.

Because the Ninth Circuit dismissed Shelley's appeal, the undisturbed federal court order prevents Shelley from leaving California with the child. Her removal of S. to Austria violated the order, justifying the change of custody sought by John. The thesis collapses for lack of support.

## A. *The Federal Court's Order Dismissing Shelley's Petition Under the Convention.*

We first disenchant John of any notion the district court's order somehow compels Shelley and S. to live out the days of their lives in California. The court's dismissal of the petition was not, as John would insist, the functional equivalent of an order enjoining Shelley from leaving California with the minor. The issue was *not* whether Shelley had the right to leave the country with S. Rather, it was whether the court was at that time *obligated* under the Convention to return S. to her habitual residence in Austria. The court simply determined it had no such obligation, invoking the grave risk exception to the return rule.[4] As the Ninth Circuit aptly noted, the juvenile court's termination of jurisdiction and its return of the child to Shelley mooted any issue of S.'s procedural right under the Convention to be returned to her habitual residence in Austria.

## B. *Child Custody Jurisdiction.*

Having determined there was nothing wrong in Shelley's leaving the country with S. after the juvenile court case was terminated, we turn to the issue of the state court's unquestionable lack of jurisdiction to modify the Austrian court's order awarding sole custody to Shelley.

The Act is the exclusive means for determining the proper forum in all custody disputes involving different states or nations. (Fam. Code, §§ 3402, 3403, 3424; *In re Joseph D.* (1993) 19 Cal.App.4th 678, 686 [23 Cal.Rptr.2d 574].)[5] It supersedes any contrary decisional or statutory law. (See *In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 264 [154 Cal.Rptr. 80].) And it provides authority for a court to make custody

[4]Under article 1 of the Convention, children wrongfully removed to or retained in any contracting state must be promptly returned to the state of their habitual residence. In this case, Shelley sought to show the juvenile court had wrongfully retained S. in California, violating the minor's rights under the Convention. The district court simply determined that returning S. to Austria might place the child at grave risk, as evidenced in the juvenile court proceedings of which it took judicial notice.

[5]The district court did not and could not rule on the underlying merits of the custody dispute. The Convention provides no structure for such a determination: Rather, it mandates

decisions on the merits, including whether or not a foreign custody order must be recognized and enforced. (Fam. Code, § 3413; *Zenide* v. *Superior Court* (1994) 22 Cal.App.4th 1287, 1293-1294 [27 Cal.Rptr.2d 703].)

■ Family Code section 3414 controls the authority of California courts to modify an out-of-state custody decree. Subdivision (a) provides, "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction."

In regard to the first factor, there is no evidence Austria, which rendered the custody decree, does not now have jurisdiction conforming with the Act. (See *Kumar* v. *Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003]; *In re Gloria F.* (1989) 212 Cal.App.3d 576 [260 Cal.Rptr. 706, 83 A.L.R.4th 729]; *Souza* v. *Superior Court* (1987) 193 Cal.App.3d 1304 [238 Cal.Rptr. 892]; and *In re Marriage of Ratshin* (1983) 144 Cal.App.3d 974 [192 Cal.Rptr. 891].) Nor has it declined to assume jurisdiction to modify the decree: Quite the opposite, it has consistently asserted its jurisdiction, most recently in 1996, when it rejected, on its merits, John's appeal of the lower court's denial of his petition to obtain an order returning S. to California and placing her in his custody.

Moreover, with regard to the second factor, there is no basis for California jurisdiction based on S.'s best interest or any "significant connection" with this state. (Fam. Code, § 3403, subd. (a)(2).)[6] Neither her birth here nor her involuntary presence during the dependency proceedings establishes a significant connection with California. Her parents do not live here. (See, e.g., *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884 [168 Cal.Rptr. 345].) S. took up residence in Vienna when she was 24 days old, and she has lived

those matters be resolved in the forum of the child's habitual residence. (42 U.S.C. § 11601(b)(4).)

[6]As the court stated in *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1016 [202 Cal.Rptr. 490], the child's best interest/significant connection clause " 'was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.' " (Original italics.)

there virtually her entire life. That is where she goes to school, has friends, obtains medical care and enjoys day-to-day activities. The minor's best interest and significant contacts are clearly in Austria, not California. Thus, the court properly found it had no jurisdiction under the Act to modify the Austrian court's custody decree.

## C. *Inconvenient Forum.*

Even assuming the court had concurrent jurisdiction with the Austrian court, its refusal to exercise jurisdiction on the ground of inconvenient forum was correct. Under Family Code section 3407, "(a) A court which has jurisdiction under this part to make an initial or modification decree may decline to exercise its jurisdiction . . . if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. [¶] . . . [¶] (c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others: [¶] (1) If another state is or recently was the child's home state. [¶] (2) If another state has a closer connection with the child and the child's family or with the child and one or more of the contestants. [¶] (3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state."

To set forth the statutory language is to demonstrate why, under the circumstances of this case, the doctrine of inconvenient forum applies. We need not belabor the point: It is self-evident and utterly irrefutable.[7]

## *Conclusion*

The Austrian court's order awarding Shelley sole custody of S. is entitled to full faith and credit. The same is true as to that court's denial of John's petition for the return of S. to California and his custody.

In closing, we express our ardent hope John will, at long last, give up his " 'jurisdictional fishing [using S.] as bait.' " (*Fry* v. *Ball* (1975) 190 Colo.

---

[7]We reject out of hand John's argument the federal court's order preempts California custody law. While it is true state law bends to the Convention in a conflict (U.S. Const., art. VI, § 2), there is no conflict. The procedural issue in the district court did not control the substantive issue of custody: That issue was not presented to that court which, in any case, had no power to decide it.

128 [544 P.2d 402, 405].) For the child's sake, this sorry tale *must* come to an end.[8]

The order is affirmed. Shelley shall recover her costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 14, 1999.

---

[8]The record indicates John may still have in his possession materials which the juvenile court ordered him to surrender within 10 days of the terminating order, to wit, the original negatives, any and all duplicates, copies and reproductions of the offensive photographs. We trust if this is the case, John will immediately rectify the situation and comply with the court's order.