Filed 12/20/24  In re G.C. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re G.C., a Person Coming Under the Juvenile Court Law. | D084591 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J521416) |
| v. | |
| L.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Alexander Calero, Judge.  Conditionally affirmed and remanded with directions.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

L.C. (Mother) appeals the juvenile court's jurisdictional and dispositional orders regarding her infant child, G.C. At the detention hearing on May 2024,[1] the juvenile court exercised temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code,[2] § 3400 et seq.). The parties do not dispute that the juvenile court acted properly in doing so.

Two months later, at the contested jurisdiction and disposition hearing, the court asserted permanent subject matter jurisdiction over G.C., found the dependency petition true, removed custody from Mother, placed G.C. with a relative in San Diego, and ordered supervised visitation and reunification services for Mother. On appeal, Mother contends the juvenile court erred in asserting permanent subject matter jurisdiction because it failed to provide proper UCCJEA notice to the court in Mexico and an opportunity for it to assume jurisdiction.

We conclude that neither California nor Mexico has "home state" jurisdiction (§ 3421, subd. (a)(1)) and only Mexico has "significant connection" jurisdiction (*id.,* subd. (a)(2)). However, the record is unclear whether Mexico has declined to exercise jurisdiction after proper notice (*id.,* subd. (a)(3).) Accordingly, we conditionally affirm the jurisdictional and dispositional orders and remand for further proceedings on the UCCJEA jurisdictional issue with directions to void these orders if Mexico assumes jurisdiction after proper notice.

---

1    All undesignated date references are to 2024.

2    Undesignated statutory references are to the Family Code.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Background Facts*

Shortly after Mother gave birth to G.C. in April 2024, she and G.C. tested positive for methamphetamine.  Mother also admitted to using the drug throughout her pregnancy.

Although Mother gave birth in California, she and G.C.'s father, A.L. (Father),[3] lived in Mexico.  Father reported that he is in a relationship with Mother, that they have three other children in their care, and that he is not allowed into the United States.  He denied current drug use and explained that he received treatment after a prior dependency case in Mexico that ended with family reunification.

Mother confirmed a prior dependency case in Mexico that ended in family reunification.  The paternal aunt, who cared for the children during the prior dependency, also confirmed the prior dependency case followed by reunification.  The aunt confirmed the parents "have always been in a relationship."  She explained that G.C.'s siblings remain in Father's care in Mexico and, while there were some issues with hygiene and proper sleeping arrangements, the siblings were fine.  She reported visiting them often.  The social worker reportedly attempted to contact Mexico's child protective services, but the record contains little information about her efforts.

During Mother's first contact with the social worker, she was provided with resources and information on how to obtain services in the United

---

[3]     Both Mother and Father confirmed to the social worker that Father is G.C.'s biological father.  Nevertheless, because Father has not provided a paternity test, he remains the "alleged" Father.  He is not a party to this appeal.

3

States. Mother visited with G.C. at the hospital and bonded with him by touching him, talking to him, and kissing him. She was loving, caring, and appropriate during her visits. Father expressed interest in having G.C. placed under his care and informed the social worker that he had supplies for G.C. Instead, the Agency placed G.C. with a paternal cousin living in the United States.

B.    *The Agency's Petition and the Detention Hearing*

In May 2024, the San Diego County Health and Human Services Agency (Agency) filed a petition on behalf of G.C. alleging that he was within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1) because he tested positive for amphetamine and methamphetamine at birth. Mother also tested positive for methamphetamine and admitted using drugs during her pregnancy. Additionally, Father had a history of substance abuse and failed to stop Mother's drug usage during her pregnancy, which resulted in a substantial risk that G.C. would suffer serious physical harm or illness.

At the detention hearing, the juvenile court stated that it was "exercising temporary emergency jurisdiction[ ] pending its UCCJEA inquiry with the courts" in Mexico. The court then found that there was a prima facie case that G.C. was a person described by Welfare and Institutions Code section 300, subdivision (b), and detained him out of his parents' care and ordered supervised visitation for the parents.

C.    *The Jurisdiction and Disposition Hearing*

At the initial jurisdiction and disposition hearing in June 2024, the juvenile court addressed possible UCCJEA issues by noting that it had "inquired with the appropriate court" in Mexico and relayed it had not yet

4

received a response.  There is no documentation about these efforts or contact in the record.

Mother reported challenges with transportation, finding a job, and learning that she was ineligible to receive Medi-Cal benefits.  Because Father expressed interest in reunification, the Agency submitted a referral to Mexico's child protective services requesting voluntary services for Father.

In July 2024, when G.C. was two months old, the juvenile court held a contested jurisdiction and disposition hearing.  The court addressed the jurisdictional issue presented by the UCCJEA.  It stated:

> "With regard to the UCCJEA, at the end of May I reached out to the appropriate [c]ourt in Rosarito asking them to respond by June 3rd if they had any cases or files. They did not respond. I assume that they do not have any cases or files, and if I make a true finding on the petition today, I am prepared to assume jurisdiction."

Mother appeared at the hearing telephonically.  Her counsel noted visitation was difficult because it was "a multi-national case and getting across the border is extremely difficult for members of the family."  The court sustained the petition, declared G.C. a dependent, and ordered visitation and reunification services for Mother.

DISCUSSION

A.  *Relevant Legal Principles*

"It is well settled in California that the UCCJEA is 'the exclusive method of determining the proper forum in custody disputes involving other jurisdictions.' " *(Segal v. Fishbein* (2023) 89 Cal.App.5th 692,  702; *In re A.C.* (2017) 13 Cal.App.5th 661, 668.)  One primary purpose of the UCCJEA is " ' "to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and

conflicting decisions." ' " (*Segal v. Fishbein*, at p. 702.) To that end, the UCCJEA "takes a strict ' "first in time" ' approach to jurisdiction." (*Id*. at p. 703; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040.) "The general rule of the UCCJEA, subject to certain delineated exceptions, is that once the court of an appropriate state—that is, one having jurisdiction under its terms—has made an initial child custody determination, that court obtains exclusive, continuing subject matter jurisdiction over the child." (*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 523.)[4] Foreign countries are treated as states for the purpose of determining jurisdiction. (§ 3405, subd. (a).)

"' "[A] court 'has jurisdiction to make an initial child custody determination' if it is the child's home state." ' " (*Segal v. Fishbein*, *supra*, 89 Cal.App.5th at p. 703, fn. 6, quoting § 3421, subd. (a)(1).) As relevant here, "[i]n the case of a child less than six months of age, the term ['home state'] means the state in which the child lived from birth with [a parent or a person acting as a parent]." (§ 3402, subd. (g).) " 'Person acting as a parent' " is "a person, other than a parent, who: (1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (2) has been awarded legal custody by a

_____

4 A " ' "[c]hild custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term *does not* include an order relating to child support or other monetary obligation of an individual.' [Citation.] ' "Initial determination" means the first child custody determination concerning a particular child.' " (*A.H. v. Superior Court, supra*, 89 Cal.App.5th at p. 523.)

court or claims a right to legal custody under the law of this state." (§ 3402, subd. (m).)

A court can alternatively exercise UCCJEA jurisdiction under a "significant connection" provision where (1) a court of another state does not have home state jurisdiction "or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum . . ." and (2) both of the following are true: "(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2); see *In re A.C., supra*, 13 Cal.App.5th at p. 668.)[5]

"When a California court asserting temporary emergency jurisdiction is aware that a child custody determination has been made by another jurisdiction, the California court 'shall immediately communicate with the other court.' (§ 3424, subd. (d).) 'To make an appropriate order under the [UCCJEA], the California court needs to know whether the sister state court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders.' [Citations.] 'The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.' (§ 3410, subd. (b).)" (*In re Cristian I.* (2014)

---

[5] The two other alternative bases for a California court to make an initial child custody determination are where: "All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child" and "[n]o court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3)." (§ 3421, subd. (a)(3), (a)(4); see *In re A.C., supra*, 13 Cal.App.5th at pp. 668–669.)

224 Cal.App.4th 1088, 1097–1098.)

We are not bound by the juvenile court's findings regarding subject matter jurisdiction but independently reweigh the jurisdictional facts. (*In re A.C.* (2005) 130 Cal.App.4th 854, 860.) Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis. (*Cristian I., supra*, 224 Cal.App.4th at pp. 1102–1103.) The appellant must show it is reasonably probable that a result more favorable to her would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *In re M.M.* (2015) 240 Cal.App.4th 703, 717–718 [harmless error test set forth in *Watson* applies to UCCJEA procedural error].)

B.      *Analysis*

There is no dispute that the juvenile court properly exercised temporary emergency jurisdiction. (§ 3424, subd. (a).) The parties, however, dispute whether the court properly exercised permanent subject matter jurisdiction.

1.      *Mother did not forfeit her jurisdictional argument.*

The Agency first argues that Mother forfeited her UCCJEA jurisdictional argument because she did not raise it below. We disagree.

Although intended to encourage parties to bring errors to the court's attention so that they may be corrected, "application of the forfeiture rule is not automatic." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Here, the UCCJEA issue was before the court, it made some form of UCCJEA inquiry, and it assumed permanent jurisdiction based on the Mexico court's failure to respond. Although Mother's trial counsel could have done more to object to the court's assertion of jurisdiction, the UCCJEA imposes independent obligations on the court "even without proactive advocacy by litigants." (*In re L.C.* (2023) 90 Cal.App.5th 728, 738 [forfeiture doctrine did not bar mother's

9

challenge to juvenile court's compliance with UCCJEA even though she failed to object on this ground in lower court].)

Applying the forfeiture doctrine in these circumstances would not serve the purpose of UCCJEA. "[T]he comity-driven purpose of the UCCJEA is to avoid jurisdictional conflict between states, promote interstate cooperation, litigate custody where the children and family have the closest connections, avoid relitigation of another state's custody decisions, and facilitate enforcement of another state's custody decrees. [Citation]" (*In re L.C., supra,* 90 Cal.App.5th at pp. 738–739.) Both the goals of the UCCJEA and the overall statutory scheme would be frustrated by the application of the forfeiture doctrine here. (*Id.* at p. 739.)

Although the Agency directs us to *In re J.W.* (2020) 53 Cal.App.5th 347, the UCCJEA jurisdictional issue there was not raised or addressed by the parents, San Bernadino county's child and family services or the court at the detention hearing or the jurisdiction and disposition hearing. (*Id.* at pp. 353–355.) The issue was not raised until the appeal after the 366.26 hearing concluded and parental rights were terminated. (*Id.* at pp. 355, 367 ["the UCCJEA does not require that a parent . . . should be allowed to silently accede to jurisdiction, or neglect to raise it, for years while parental fitness is adjudicated, only to assert a lack of jurisdiction for the first time after a termination order"].) Here, by contrast, the court was aware of the issue when the case began and addressed it at the detention hearing and subsequent hearings, including the jurisdiction and disposition hearing. Moreover, the matter is still at an early stage and the case is ongoing in the juvenile court.

In these circumstances, the controlling authority is *In re L.C., supra,* 90 Cal.App.5th at pp. 737–739 [finding no forfeiture and concluding that *In re*

*J.W.* failed to consider several reasons "why the forfeiture doctrine should not apply to the UCCJEA issue"—"chief among them the purpose of forfeiture rules generally, the comity-drive purpose of the UCCJEA, and the comprehensive statutory scheme that our Legislature enacted when adopting the UCCJEA"].)  We therefore conclude that Mother did not forfeit the UCCJEA jurisdictional issue.

      2.      *Neither Mexico nor California is the home state.*

A court may make exercise permanent subject matter jurisdiction if it is the child's home state.  (§ 3421, subd. (a)(1).)  Because G.C. was less than six months old at the time his dependency petition was filed, his home state is the state he lived from birth with a parent or person acting as a parent. (§ 3402, subd. (g).)

Because G.C. has never lived in Mexico, it is not his home state under the statute.  (*In re R.L.* (2016) 4 Cal.App.5th  125, 140 ["Because [the child] never lived in Mexico, Mexico does not have home state jurisdiction."].)  Additionally, California is not his home state because neither of his parents have lived with him from birth in California.  (§ 3402, subd. (g).)  At the time G.C. was born, his parents lived in Mexico.  Although Mother traveled to California for his birth, she returned to Mexico afterward.  His Father lives and works in Mexico and is unable to cross the border.

Moreover, G.C. has not lived in California with a "[p]erson acting as a parent," as defined the statute.  (§ 3402, subd. (m).)  G.C.'s brief hospital stay following birth and the Agency's protective custody since it filed the petition do not make California his home state.  (*In re R.L., supra*, 4 Cal.App.5th 125, 138–140.)  On this point, *In re R.L.*, is instructive.  (*Ibid.*)  There, the mother alternated living between Nevada and Mexico, but primarily lived in Mexico in the months before the child was born.  (*Id.* at pp. 138–140.)  She traveled

11

to California to deliver the baby and the child was detained after the baby tested positive for amphetamine and methamphetamine. (*Id.* at p. 132.) The Court of Appeal explained that neither Mexico nor California was the home state. (*Id.* at p. 140.) "[A] temporary hospital stay in a state incident to birth, by itself, is insufficient to confer home state jurisdiction." (*Id.* at p. 139.) Moreover, "a social services agency does not become 'a person acting as a parent' for purposes of home state jurisdiction by detaining a child in protective custody in an emergency." (*Id.* at p. 131.) Under the statute, a person "acting as a parent" must have physical custody of the child or have had physical custody of the child for six months "within one year *immediately before* the commencement of a child custody proceeding." (*Id.* at p. 140, citing § 3402, subd. (m), italics added..) As in *A.L.*, because "the Agency did not have physical custody of [the child] immediately before it initiated the dependency action," the California court cannot assume home state jurisdiction. (*Id.* at pp. 139–140.)

Here, similar to *In re R.L.*, G.C.'s home state is neither Mexico nor California.

### 3. *Mexico, not California, has a significant connection.*

Even though G.C's home state is neither Mexico nor California, section 3421 subdivision (a)(2) allows a court to exercise jurisdiction under its "significant connection provision." (*In re. R.L., supra*, 4 Cal.App.5th at p. 140.) As noted, the requirements of this provision include that "[t]he child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence" and "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).)

12

Here, neither of G.C.'s parents have a significant connection to California that satisfies this provision. (§ 3421, subd. (a)(2)(A); *In re R.L.*, *supra*, 4 Cal.App.5th at p. 140.) Father cannot enter the United States and is a resident of Mexico. While Mother entered the United States to give birth, she returned to Mexico afterward and remained there as the dependency proceedings proceeded. In addition, because Mother did not live in California, she could not access reunification services there. Because the requirements of subsection (a)(2) were not established, the juvenile court did not have subject matter jurisdiction under this subdivision. (See *Brown v. Brown* (1999) 71 Cal.App.4th 358, 365–366 [holding that there was "no basis for California jurisdiction" because "[n]either her birth here nor her involuntary presence during the dependency proceedings establishes a significant connection with California" and "[h]er parents do not live here."].)

Mexico, on the other hand, has a significant connection with both parents and, because the family had a prior dependency case there, it has substantial evidence concerning the care and protection the parents provide their children, as well as the parents' training, and personal relationships. The paternal aunt, who has custody of one of G.C.'s siblings, resides in Mexico and participated in the prior dependency action as a caregiver to two other siblings. The maternal grandparents and a maternal aunt and uncle also reside in Mexico. Father was employed in Mexico and Mother sought employment in Mexico. Even though he was a newborn, G.C.'s significant community, familial, social, and cultural ties are all in Mexico. (Compare *Brown, supra*, 71 Cal.App.4th at 365–366 [holding that there was a "significant connection" with Austria where the "minor's best interest and significant contacts are clearly in Austria, not California"] with *In re R.L.*, *supra*, 4 Cal.App.5th at 141, 145 [Mexico did not have jurisdiction where the

13

mother's "stay in Mexico was tenuous," the alleged father "did not express an interest in paternity until [the child] was more than a year old," and his relatives were unwilling to care for the child "until paternity was established" and they "had reason to doubt" his paternity.].)

We conclude that only Mexico had subject matter jurisdiction under the "significant connection" provision of the UCCJEA at the time G.C.'s dependency petition was filed. (§ 3421, subd. (a)(2)(A).)

4. *It is not clear whether Mexico declined to exercise jurisdiction.*

In these circumstances, the only way for the California juvenile court to assume jurisdiction was if Mexico declined to exercise jurisdiction. (§ 3421 subd. (a)(3); *In re Gino C* (2014) 224 Cal.App.4th at 959 (*In re Gino C.*).) But the record here is missing any evidence that the court in Mexico actually declined to exercise jurisdiction. There is no evidence that the juvenile court notified the court in Mexico of the nature of the dependency proceedings or inquired as to whether Mexico wanted to exercise jurisdiction.

On the contrary, the record merely establishes that the juvenile court reached out to the court in Mexico "asking them to respond by June 3rd if they had any cases or files. They did not respond. I assume that they do not have any cases or files, and if I make a true finding on the petition today, I am prepared to assume jurisdiction." There is nothing to indicate if the court's contact was by phone, email or in writing and it did not provide the specifics of the request other than to ask whether the Mexico court "had any cases or files." Specifically, there is no evidence that the juvenile court's notice inquired whether Mexico wished to assert jurisdiction. (See *In re L.C.*, *supra*, 90 Cal.App.5th at p. 737, fn. 4 ["A court exercising emergency jurisdiction under section 3424 is required to contact and provide notice to another state's court to determine whether the other state wishes to assert

jurisdiction under section 3421."].)  Because the record is insufficient to determine whether the court's attempted contact sufficiently complies with the requirements of the UCCJEA (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1099), we will remand with directions to the court to make that determination and, if Mexico has not been provided adequate notice, to provide proper notice and an opportunity for Mexico to assume jurisdiction. (*In re A.M.* (2014) 224 Cal.App.4th 593, 599–600.)

Our approach is similar to the approach taken by this court in *In re A.M.*, where there was "nothing in the record to indicate that this court ever contacted a Mexican court."  (*In re A.M., supra*, 224 Cal.App.4th at p. 598.) The court there affirmed the juvenile court's jurisdictional and dispositional orders but remanded for the limited purpose of contacting and providing notice to Mexican authorities to determine whether Mexico wished to assume jurisdiction, and if so, to void the jurisdictional and dispositional orders.  (*Id.* at pp. 599–600.); see also *In re Gino C.*, *supra*, 224 Cal.App.4th at p. 966 [remanded to the juvenile court to conduct further proceedings where "the only apparent avenue for the court to obtain home state jurisdiction over the children is for Mexico to decline to exercise its home state jurisdiction. (§ 3421, subd (a)(3).) Since the court opted to remain passive and did not contact Mexico, Mexico has not been given an opportunity to decide whether to exercise its home state jurisdiction."]; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1176 [remanded to the juvenile court to determine whether it could "assert continuing jurisdiction" where the "record is unclear whether the juvenile court attempted to communicate with the Saudi Arabian court at any time before or after the jurisdictional hearing"].)

5.     *Failure to give proper notification is not harmless.*

"Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis." (*In re. R.L., supra*, 4 Cal.App.5th at p. 143.)  Mother must demonstrate that it is reasonably probable that a result more favorable to her would have been reached in the absence of the error. (*Ibid*.)

As discussed, with the current record before us, it is not possible to tell whether the juvenile court erred in exercising permanent subject matter jurisdiction.  There is at least a reasonable probability the Mexico courts would assume jurisdiction, especially in light of the prior dependency proceeding in Mexico involving G.C.'s siblings who still live there.  If forced to litigate the dependency action in California, rather than Mexico where she and her family live, Mother would be at a significant disadvantage in terms of successful reunification.  (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.)  Thus, the improper exercise of jurisdiction would amount to a prejudicial error in contravention of the "law's strong preference for maintaining the family relationship if at all possible." (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 843.)

## DISPOSITION

The jurisdictional and dispositional orders are conditionally affirmed and the matter is remanded to the juvenile court for the purpose of (1) determining whether notice to Mexico was proper; (2) if so, determining whether Mexico declined to exercise jurisdiction; (3) if not, providing proper notice to Mexico and an opportunity for it to assume jurisdiction; (4) if Mexico assumes jurisdiction and commences proceedings, proceeding in conformity with the UCCJEA and voiding the jurisdictional and dispositional orders; and

16

(5) if Mexico declines or has already declined to assume jurisdiction after proper notice, assuming permanent jurisdiction under section 3421, subdivision (a)(3) and proceeding accordingly.


                                                            BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.